

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/AL
F.#2010R00153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 15, 2013

By Hand Delivery and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re: United States v. Emanuele Favuzza
           Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

    The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for May 3, 2013. For the reasons set forth below, the government respectfully asks the Court to impose a term of imprisonment within the advisory Guidelines range of 37 to 46 months.

I.    Background

    On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant and thirty-eight others with a variety of offenses, including racketeering conspiracy, based on their leadership of, membership in and association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively). (Docket Entry No. 1.) The defendant is an inducted member of the Colombo family. (Presentence Investigation Report ("PSR") ¶11.)

    The defendant was charged in Count One of the indictment with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), including as racketeering acts ("RAs") the extortion of John Doe #2 (RA 5), the extortionate extension of credit to, and collection from, John Doe #5 (RA 8) and the conspiracy to collect credit by extortionate means from John Doe #6 (RA 9). (Docket Entry No. 1 ¶¶ 18, 26, 31-36.) In addition, the defendant was charged in Count Fifty-Nine with using,

carrying and possessing a firearm in relation to the racketeering conspiracy charged in Count One. (Id. ¶ 252.)

On January 20, 2011, the indictment was unsealed and the defendant was arrested. (Docket Entries Nos. 2, 63.) On August 9, 2012, the defendant pled guilty to Count One, pursuant to a plea agreement, before Your Honor. (Docket Entry No. 881; PSR ¶ 1.)

II. Discussion

The government respectfully submits that a sentence within the advisory Guidelines range of 37 to 46 months is appropriate in this case.

A. Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

B. The Guidelines Range Is 37 to 46 Months

The Probation Department has determined that, if the defendant receives a two-level reduction, pursuant to U.S.S.G. § 5K2.0, based on a global disposition, then the total offense level is 17 and, because the defendant is in Criminal History Category IV, the advisory Guidelines range of imprisonment is 37 to 46 months. (PSR 2d Add. ¶¶ 131, 143.)

-2-

The government agrees with this determination, and is prepared to move for the two-level reduction based on a global disposition. In addition, the Probation Department's determination is consistent with the estimate set forth in the plea agreement, except that the estimate in the plea agreement assumed that the defendant was in Criminal History Category III.[1] As the government has previously explained, the Probation Department's determination that the defendant is in Criminal History Category IV is supported, in part, by two factors. First, the defendant's criminal history includes a conviction based on his July 1, 2009, arrest for promoting gambling. (PSR ¶¶ 86-87). That prior conviction did not appear on the criminal history report that the government obtained, and disclosed to the defendant pursuant to Fed. R. Crim. P. 16, prior to estimating the defendant's criminal history. (Govt. Ltr. to U.S. Probation Dept. dated Jan. 2, 2013 (Docket Entry No. 1058) at 2.) Second, the Probation Department's determination incorporates three criminal history points for the defendant's conviction based on his September 14, 2000, arrest for two counts of conspiracy to collect credit by extortionate means. (PSR ¶¶ 82-85; PSR Add. at 2-3; PSR 2d Add. at 3.)

The defendant agrees that his adjusted offense level is 17, but submits that he is in Criminal History Category III, and, therefore, that the advisory Guidelines range of imprisonment is 30 to 37 months. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 7-9.) In support, the defendant argues that the conviction based on his September 14, 2000, arrest should not count toward his criminal history because the racketeering acts alleged in the present case preceded the conviction based on his September 14, 2000, arrest. (Id.)

---

[1] Therefore, in the plea agreement the advisory Guidelines range of imprisonment was estimated to be 30 to 37 months.

That argument lacks merit. As an initial matter, the Guidelines provide that, with respect to racketeering offenses:

> Certain conduct may be charged in the count of conviction as part of a "pattern of racketeering activity" even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a conviction <u>prior to the last overt act of the instant offense</u>, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense.

U.S.S.G. § 2E1.1, App. Note 4 (emphasis added). There is no basis for the defendant's suggestion that the term "overt act" is limited to those acts alleged in the indictment as racketeering acts. Notably, "the agreement proscribed by section 1962(d)," which makes it unlawful to participate in a racketeering conspiracy, "is [a] conspiracy to participate in a charged enterprise's affairs through a pattern of racketeering, not [a] conspiracy to commit predicate acts[.]" <u>United States v. Pizzonia</u>, 577 F.3d 455, 463 (2d Cir. 2009) (internal quotation marks and citation omitted). In this case, the defendant and his coconspirators committed numerous overt acts following the defendant's September 14, 2000, arrest. At a minimum, the defendant was inducted into the Colombo crime family in 2009, and later planned to participate in another ceremony in 2010. (PSR ¶¶ 11-14.) Both of these acts constitute overt acts in furtherance of the charged racketeering conspiracy, and both support the assignment of criminal history points to the prior conviction. <u>United States v. Marrone</u>, 48 F.3d 735, 737-40 (3d Cir. 1995) (affirming district court's decision to treat bribery offense, which was charged as a predicate act in a racketeering conspiracy case, as a prior sentence because after committing the bribery offense the defendant committed the uncharged overt act of purchasing a silencer).

The principle case relied upon by the defendant is inapposite. In <u>United States v. Minicone</u>, 960 F.2d 1099 (2d Cir. 1992), the Second Circuit considered whether the district court, which incorporated a prior conviction for murder solicitation into the defendant's criminal history, should also have incorporated that crime into the defendant's base offense level for racketeering conspiracy. <u>Id.</u> at 1111. The Second Circuit found that although there was "some merit" to doing so, the district court "reasonably construed [Application] Note 4 [to U.S.S.G. § 2E1.1] to mean that the conduct underlying the previously imposed sentence should not be used in calculating the base offense level for the instant offense." <u>Id.</u> Because in the

present case the Probation Department considered the prior conviction only for criminal history purposes and not in determining the base offense level, Minicone in no way suggests that the Probation Department has erred (and, if anything, leaves open the possibility of incorporating the prior conviction into both the defendant's criminal history and base offense level).[2] In any event, consistent with Application Note 4, the Probation Department did not include the conduct charged in Racketeering Act 8 of Count One in its calculation of the adjusted offense level because such conduct was included in the calculation of the applicable criminal history category.

### C. No Downward Departures Are Warranted

The defendant asks the Court to take into account various "compelling personal mitigating factors . . . both under the Guidelines and the § 3553(a) criteria." (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 9.) Those factors consist of a "combination of health issues" and certain family circumstances. (Id. at 2.) The government respectfully submits that no departures are warranted under the Guidelines.

#### 1. Legal Standard

The defendant bears the burden of proving that he is entitled to a downward departure under the Guidelines. United States v. Cotto, 347 F.3d 441, 445 (2d Cir. 2003). He must do so

---

[2] The other case the defendant relies on is United States v. Robinson, 354 Fed. Appx. 518, 2009 WL 4249851 (2d Cir. Nov. 30, 2009). That case is even less helpful to the defendant. In Robinson, the Second Circuit held that "where a prior conviction is charged as an overt act in support of a RICO conspiracy, and is followed by additional overt acts, a sentencing court may employ the prior conviction to support a finding of career offender status." Id. at *3. Because Robinson addresses the specific issue of career offender status, it is not clear that it bears on the general determination of a defendant's criminal history. Furthermore, however, to the extent that Robinson is applicable here, it would plainly support, not prohibit, the use of a prior conviction for determining a defendant's criminal history, particularly where, as here, the prior conviction is not being used to determine the base offense level. Id. (acknowledging the defendant's "unfair double-counting" argument but rejecting it because the defendant failed to demonstrate that his base offense level would have been different had it not included the prior conviction).

by a preponderance of the evidence. United States v. Robertson, 09 CR 87 (JMC), 2011 WL 5353071, at *4 (D. Vt. Oct. 4, 2011) (citing United States v. Valdez, 426 F.3d 178, 184 (2d Cir. 2005)); United States v. Volpe, 78 F. Supp. 2d 76, 89 (E.D.N.Y. 1999) (citing United States v. Anders, 956 F.2d 907, 911 (9th Cir. 1992)).

  2. Physical Condition

  A departure based on physical condition applies only when there is "[a]n extraordinary physical impairment." U.S.S.G. § 5H1.4. For example, the Guidelines provide that "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." Id. "To qualify, [physical impairments] typically must be impairments that the prison system is unable to accommodate." United State v. Troche, 01 CR 274 (RWS), 2003 WL 223468, at *2 (S.D.N.Y. Jan. 21, 2003) (citing United States v. Altman, 48 F.3d 96 (2d Cir. 1995)).

  The defendant has not met his burden of showing that the prison system is unable to accommodate his physical condition, and this departure is therefore not warranted. The defendant claims that his physical conditions include coronary disease, hypertension, diabetes, spinal stenosis, gout and enlargement of the prostate gland. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 2.) Although the defendant has submitted medical records from five doctors, none of those doctors states or even suggests that the prison system cannot accommodate the defendant's conditions. (Id., Ex. A.) Therefore, no departure based on physical conditions is warranted.

3. Family Circumstances

There is a strong presumption against awarding a departure based on family circumstances. That presumption is consistent with the Second Circuit's observation that "[d]isruption of the defendant's life, and the concomitant difficulties for those depend on the defendant, are inherent in the punishment of incarceration." United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992). Therefore, the Sentencing Guidelines provide that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. In addition, and more specifically, the Guidelines provide that a departure based on loss of caretaking or financial support "requires" the presence of, inter alia, the following circumstances:

- The sentence "will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family";

- "The loss of caretaking or financial support exceeds the harm ordinarily incident to incarceration for a similarly situated defendant"; and

- "The defendant's caretaking or financial support [is] irreplaceable to the defendant's family."

U.S.S.G. § 5H1.6, App. Note 1(B).

In this case, the defendant has not shown a likelihood of disruption greater than that inherent to the punishment of incarceration, and in fact it appears there is less risk of such disruption in this case than in many others. The defendant's three children are adults -- the youngest is 26 years old -- and two of them, including the only one who lives with the defendant, are employed. (PSR ¶ 100.) Although the defendant notes that his home was damaged in Hurricane Sandy, he does not explain how his incarceration would impede any repair efforts. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 2.) And the letters of support submitted on the defendant's behalf do not suggest that his incarceration will cause any extraordinary disruption, and, in fact, suggest that to the extent the defendant's wife or children rely on him, an extensive network of friends, relatives and other members of the community will be able to take care of them. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at Ex. B.) Therefore, no departure based on family circumstances is warranted.

    D.    A Sentence Within the Guidelines Range Is Appropriate In This Case

Based on the factors set forth in 18 U.S.C. § 3553(a), the government urges that Court to impose a sentence within the advisory Guidelines range of imprisonment.

    1.    The Nature and Circumstances of the Offense

The defendant has been convicted of participating in a racketeering conspiracy with members and associates of the Colombo family. As part of the racketeering conspiracy, the defendant participated in one extortion, three extortionate collections of credit and a gambling conspiracy. These are serious crimes, particularly when committed as part of a racketeering conspiracy under the auspices of an organized crime family. 18 U.S.C. § 3553(a)(1).

The Colombo family and La Cosa Nostra are dangerous criminal enterprises that use violence, including murder, to further their interests. (PSR ¶ 8.) The defendant has been an inducted member, or "soldier," of the Colombo family since February 1, 2009, and before that was a long-time associate. (Id. ¶ 11.) The defendant's willingness to be inducted into the Colombo family in 2009 demonstrates his commitment to the Colombo family and to all of its criminal goals -- the essence of the racketeering conspiracy to which he pled guilty. In addition, the defendant was scheduled to host a subsequent induction ceremony on December 7, 2010, although the ceremony was canceled due to perceived law enforcement surveillance. (Id. ¶¶ 12-14.) His participation in the scheduled ceremony to induct a new group of Colombo family soldiers further demonstrates the defendant's deep commitment to the Colombo family and its criminal goals.

In connection with the racketeering conspiracy, the defendant participated in at least five racketeering acts. First, between 1997 and 1999, the defendant used extortionate means to collect money from John Doe #2, as alleged in Racketeering Act 5 of Count One. (Id. ¶ 15.) During the course of this crime, the defendant assaulted the victim in the middle of the street, after which the victim began to pay the defendant the money purportedly owed. (Id. ¶ 16.)

Second, in 1999, the defendant conspired with co-defendant Giuseppe DeStefano to collect a debt owed by John Doe #5, as alleged in Racketeering Act 8 of Count One. (Id. ¶ 20.) In particular, the defendant instructed DeStefano to tell the

victim that the defendant was "pissed off" because the victim had not repaid the defendant. (Id. ¶ 21.) The defendant previously pled guilty to this conduct on November 1, 2001. (Id. ¶ 22.)

Third, in 1999, the defendant used extortionate means to collect an extension of credit from John Doe #6, as alleged in Racketeering Act 9 of Count One. (Id. ¶ 23.) In particular, the defendant was recorded demanding that the victim see him to pay him and admitting to co-defendant Benjamin Castellazzo, then the captain to whom the defendant reported, that the money owed by the victim was based on a loan. (Id. ¶ 24.)

Fourth, in 1999, the defendant participated in an illegal gambling conspiracy. (Id. ¶ 25.) He did this as part of the "crew" then overseen by co-defendant Benjamin Castellazzo. (Id. ¶ 26.) The defendant's role was to be a bookmaker, which meant that, operating through "runners," he accepted bets, paid money to winning bettors and collected money from losing bettors. (Id. ¶ 26 & n.1.) Notably, the defendant engaged in a similar gambling operation following his release from prison in 2004. (PSR ¶¶ 82, 86.)

Fifth, in 1999 the defendant conspired to collect an extension of credit from DeStefano. (Id. ¶ 29.) During the course of the conspiracy, the defendant told his coconspirator Charles Riccotone that if the victim did not pay the defendant by the following Saturday, the victim was "gonna fucking wind up being sorry to tell me" that he could not pay. (Id.)

In addition to these five racketeering acts, the defendant has participated in other, more recent criminal conduct relating to the affairs of the Colombo family. In 2011, while the defendant was on pretrial release in the present case, he participated in a conspiracy to use extortionate means to collect an extension of credit from an individual whose identity has been disclosed to the parties and the Court.[3] (Id. ¶ 91.) Specifically, as the defendant acknowledges, in 2011 he met with then-Colombo family captain Reynold Maragni, who, unbeknownst to the defendant, was cooperating with the government, and discussed how to resolve an unpaid loansharking loan. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 2-3.) At a minimum, these facts demonstrate that, despite being arrested in the present case and subject to conditions that included non-association with members

---

[3] Although the defendant did not allocute to this crime, he received coverage for it in Paragraph 5(a) of the plea agreement.

-9-

and associates of organized crime, the defendant was willing and able to meet with at least one member of organized crime and to participate in the collection of a loansharking debt, a staple of organized crime that often leads to violence or the threat of violence.

The defendant was able to participate in the aforementioned crimes because of his association with, and subsequent membership in, the Colombo family. In particular, extortion, loansharking and gambling businesses are not possible if they are not backed by violence or the credible threat of violence, and most of the defendant's racketeering acts involved either the former or the latter. This inherent connection to organized crime and to violence or the threat of violence underscores the seriousness of the defendant's racketeering acts.

In light of the foregoing, the government respectfully submits that the nature and circumstances of the offense warrant a sentence within the advisory Guidelines range.

### 2. The Defendant's History and Characteristics

The defendant's history and characteristics show that he is committed to a life of crime. 18 U.S.C. § 3553(a)(1).

As a preliminary matter, the defendant is an inducted member of the Colombo family and was scheduled to host an induction ceremony less than two months before he was arrested in this case. (PSR ¶¶ 11-14.) These facts are, in themselves, serious factors for sentencing.

In addition, the defendant's history includes four prior convictions:

- In 1978, the defendant was convicted of petit larceny and sentenced to pay a $100 fine. (Id. ¶¶ 78-79.)

- In 1997, the defendant was arrested for grand larceny. (Id. ¶ 80.) In that case, the defendant and others used a fraudulent credit card repair service to steal approximately $62,000 from Citibank, Household Credit Services and American Express. (Id. ¶ 81.) The defendant was sentenced to a five-year term of probation for that crime. (Id. ¶ 80.)

- In 2000, the defendant was arrested for two counts of conspiracy to collect credit by extortionate means. (Id. ¶ 82.) The charges were based on the defendant's participation in the Castellazzo crew's gambling business and his efforts to collect from the individuals identified in this case as John Doe #2 and John Doe #5, as well as from DeStefano. (Id. ¶ 83.) The defendant was sentenced by Judge Glasser to a 33-month term of imprisonment and a three-year term of supervised release for those crimes. (Id. ¶ 82.)

- In 2009, the defendant was arrested for promoting gambling. (Id. ¶ 86.) He was sentencing to a 90-day term of imprisonment in that case. (Id.)

These convictions are part of the defendant's history and characteristics, and, although partially accounted for by the racketeering acts alleged in the present case, should be taken into account at sentencing, particularly in light of the fact that in the present case the defendant has been convicted of the separate, serious crime of racketeering conspiracy.

As noted above, the defendant requests leniency, in the form of either a downward departure within the Guidelines or consideration under 18 U.S.C. § 3553(a), based on his physical conditions and family circumstances. (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 2.) Just as those reasons do not warrant leniency under the Guidelines, they also do not warrant leniency under Section 3553.

The defendant has been complaining to federal courts about his physical condition since he was sentenced by Judge Glasser in 2002. During that sentencing proceeding, the defendant, through counsel, claimed to suffer from "a host of medical problems," including diabetes, a heart attack, a fracture in his mouth and "foot ailments." (United States v. Favuzza, 00 CR 840 (ILG), Tr. of Stg. dated Feb. 6, 2002 (attached as Ex. A) at 9-10.) To the extent he was suggesting either that imprisonment would worsen his conditions or that the conditions rendered him unlikely to recidivate, both suggestions have been disproven by his conviction in the present case. Indeed, in 2009, seven years after raising his medical issues to Judge Glasser, the defendant was chosen for, and accepted, induction into the Colombo family, which proves that his commitment to a life of crime has only increased despite his purported medical issues. Therefore, a sentence that places undue reliance on those conditions would thwart the other purposes of sentencing, such as reflecting the seriousness of the offense, promoting

-11-

respect for the law, providing just punishment, and providing deterrence. Furthermore, given the defendant's position as an inducted member of the Colombo family, his health will not prevent him from committing more crimes in the future -- as his history and characteristics suggest he will -- because he can direct others to carry out crimes for him.

The defendant has also been invoking his family circumstances since his 2002 sentencing. During that proceeding, the defendant, through counsel, argued that his conviction "devastated his family," that he "attended to his family affairs" and that "[h]e is a loving and caring father." (Id. at 8, 10.) Judge Glasser, addressing both the defendant and DeStefano, who was a co-defendant in that case, rejected that argument, observing that:

> [I]f they thought about the possibility that the crimes that they were engaged in might eventually lead them to a term in prison, and thought about what those implications might be for their wives, their sons, their parents and everybody else who writes letters and tells me how difficult it's going to be without the person standing before me, then perhaps they wouldn't get involved in that criminal behavior.

(Id. at 13.) Judge Glasser's observation applies with even greater force in the present case, and is the appropriate response to the defendant's argument that he warrants "consideration . . . as a devoted husband, father, grandfather, uncle and family member." (Def.'s Stg. Ltr. (Docket Entry No. 1133) at 2.) Having seen once that his family circumstances would not preclude a term of imprisonment -- Judge Glasser imposed a term of 33 months -- it is incumbent on the defendant, not this Court, to spare the defendant's family from his additional crimes and incarceration. Now, having failed to heed Judge Glasser's words, the defendant should not cite his family as a basis for leniency.

### 3. Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

The sentence must reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offense is serious and involved actual violence, the threat of violence and the risk of violence. In addition, by engaging in a life of crime under the auspices of the Colombo family, including

by participating in the planned induction of new soldiers, the defendant has demonstrated that he has no respect for the law. This point is further demonstrated by the fact that the defendant committed the crimes for which Judge Glasser sentenced him while serving the term of probation imposed in his grand larceny case, and that he participated in the racketeering conspiracy charged in the present case throughout the periods in which he was serving that term of probation and the term of supervised release subsequently imposed by Judge Glasser.  Finally, as noted above, in 2011, after he was arrested in the present case, the defendant participated in, or at least discussed, a conspiracy to collect an extension of credit with a then-Colombo family captain, further demonstrating his lack of respect for the law.

### 4. Affording Deterrence and Protecting the Public

The sentence must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(B) and (C).  "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08 CR 332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). The defendant's prior arrests and convictions did not serve the purpose of specific deterrence -- nor did the prior 33-month sentence imposed by Judge Glasser or the terms of probation and supervised release imposed in prior cases -- and his subsequent induction into the Colombo family demonstrates that the defendant has not been deterred from committing crimes.  Significantly, as noted above, the defendant was not even deterred by his arrest, or the conditions imposed by the Court upon his release, in this very case.  Significantly, on one consensual recording made by Maragni on June 2, 2011, the defendant bragged that he continued to meet with members and associates of organized crime, stating:

> You wanna know something Reynolds, I see everybody.  I see Junior [a reference to co-defendant and Colombo family captain Joseph "Junior Lollipops" Carna].  [UI] What are you gonna do?  We gotta do what we gotta do.

In this recording, Favuzza made clear that he had not been disabled or deterred from committing crime in any way by his arrest or by the Court's restrictions.  And by saying, "we gotta do what we gotta do," he also made clear his intention to continue to engage in a life of crime under the auspices of the Colombo family.

In sum, based on these facts, a lenient sentence would not sufficiently deter either the defendant or others who are, as the defendant was in his youth and following each of his convictions, in a position to choose between a law-abiding life and a life of crime.

III. Conclusion

In this case, given all of the facts and circumstance discussed above, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 37 to 46 months.

                                            Respectfully submitted,

                                            LORETTA E. LYNCH
                                            United States Attorney

By:        /s/
                   Elizabeth A. Geddes
                   Allon Lifshitz
                   Gina Parlovecchio
                   Assistant U.S. Attorneys
                   (718) 254-6430/6164/6228

cc:  Clerk of the Court (KAM) (by ECF)
     Ephraim Savitt, Esq. (by ECF)
     Michelle Espinoza, Senior U.S. Probation Officer (by email)